UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEROY J. HOLDMEYER, | : | |
| PLAINTIFF | : | CIVIL NO. 3:02CV1978 (PCD) |
| v. | : | |
| ANN M. VENEMAN, SECRETARY, DEPARTMENT OF AGRICULTURE, | : | |
| DEFENDANT. | : | MARCH 16, 2004 |

### DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7(d) of the Rules of Civil Procedure for the District of Connecticut, and the Order of this Court dated February 19, 2004, the Defendant, Ann M. Veneman, Secretary of the Department of Agriculture ("Defendant"), through her undersigned counsel, hereby respectfully submits this reply brief in further support of her December 15, 2003 motion for summary judgment.  This brief is also submitted in response to the Plaintiff's January 27, 2004 opposition to that motion ("Plaintiff's Memorandum") and supplemental documentary submission of March 3, 2004.  Plaintiff has failed to carry his burdens under law and judgment should now enter in Defendant's favor.

I.   Plaintiff Has Failed to Establish that He Exhausted His Administrative Remedies as to Certain of His Title VII Claims

In his opposition papers, Plaintiff has attempted to establish that all of his claims are properly before this Court.   However, Plaintiff's submission is insufficient to satisfy his burden.

Defendant has argued that several of the Plaintiff's claims must be dismissed because of his failure to comply with mandatory time deadlines.  See Defendant's Memorandum at pp. 3-5.  Specifically, Defendant argued that given that Plaintiff first sought EEO counseling on April 26, 1999 in connection with his claims, any issues outside of this 45-day period must be dismissed as time-barred by 29 C.F.R. §

1614.105(a)(1).  In an effort to determine what issues have been raised by the Plaintiff in this case, Defendant examined the numerous documents which the Plaintiff attached to his *pro se* complaint.  The first attachment is a three-page document describing four issues, which document was also attached to the Plaintiff's EEO Complaint dated August 22, 1999. The issues presented in Issue ## 1, 2, and 4 relate to the processing and denials of his administrative grievances.  Issue # 3 states that on April 2, 1999 a manager requested him to ask during a meeting who was retiring in the near future.

The attached documents also reference the issues of whether Carl Battista was qualified to have been named as the Providence Circuit Supervisor in June of 1997; whether he was qualified to evaluate the Plaintiff and rate his performance thereafter; and whether the FSIS Boston District had been "mismanaged".  Defendant has argued that these latter issues occurred outside of the 45-day period and are thus time-barred.

In his opposition, Plaintiff does not address or dispute the Defendant's argument that the issues relating to the qualifications of Carl Battista and the mismanagement of the Boston District are time-barred.  See Plaintiff's Memorandum at pp. 5-6.  Nor does he dispute that he first contacted an EEO Counselor on April 26, 1999.  See Plaintiff's Local Rule 56(a)(2) Statement, at p.3,  Item 12.  Rather, he claims that he is challenging the denial of his two administrative grievances in April of 1998 on the grounds that the denial was motivated by discrimination.  He argues that he only became aware of the alleged discrimination in the last week in March of 1999 when a fellow employee named John Roderick relayed some information to him.  See Plaintiff's Memorandum at p. 5.  Plaintiff claims that this information indicated to him that the denial of his grievances was discriminatory.  See Plaintiff's Memorandum at p. 5.

Defendant submits that the Plaintiff's offer of proof is insufficient to establish that he properly exhausted his claims in Issues # 1 and # 2.  He has conceded the untimeliness of the claims relating to the qualifications of Carl Battista and the

mismanagement of the Boston District.  As to the claim in Issue # 1 relating to information from Mr. Roderick, Plaintiff's showing is insufficient.  Plaintiff alleged in Issue # 1 that he was told that his grievances were initially sustained but that "[s]omeone higher up stopped it."  However, according to Mr. Roderick's affidavit, he was at a training session in Washington, D.C. in February of 1999 when he spoke with an individual from the agency's Civil Rights division, who told him that Plaintiff's "complaint was sustained, but for some unknown reason the complaint got squashed."  See Roderick Affidavit dated February 1, 2004, at p.1.  Plaintiff claims that since he discovered that the Civil Rights employee had direct knowledge of the Plaintiff's grievances, he was then aware that "discrimination based on race and color played a role in Ron Hicks' denial of his administrative grievances."  Id.  However, the second-hand information relayed to him by Mr. Roderick does not suggest that the Plaintiff's grievances were denied because of discrimination by Mr. Hicks or any other agency employee.   It does not identify the circumstances under which the "complaint" was "squashed" or define what was meant by "squashed".  It does not identify Mr. Hicks.  It does not offer any discriminatory or illicit motive for the denial of the grievances.  And Plaintiff was not prevented from contacting an EEO Counselor prior to talking with Mr. Roderick.  In fact, Plaintiff had already challenged some of the Issues # 1 and # 2 in 1998 by filing grievances which charged unfair treatment.

In sum, Mr. Plaintiff has not provided any evidence that he made timely contact with an EEO Counselor as to the events in Issues ## 1 and 2.  Accordingly, these claims are untimely and should be dismissed.

II.   Plaintiff Has Failed to Rebut Defendant's Argument that His Election of the Grievance Process Forecloses his Title VII Complaint

Plaintiff also argues that his filing of administrative grievances did not foreclose his filing of EEO Complaints concerning the same subject matter.  See Plaintiff's Memorandum at pp. 6-7.  Defendant has argued that since Plaintiff elected to pursue

his claims through a negotiated grievance process, 29 C.F.R. § 1614.301(a) bars him from including it in this Title VII lawsuit as a basis for seeking recovery.  See Defendant's Memorandum at pp. 5-7.  Plaintiff does not dispute that he has grieved most of the claims raised in this action.  Rather, he appears to argue that the filing of his EEO Complaint worked to cancel his grievances.  See Plaintiff's Memorandum at p.6.

Defendant submits that the Plaintiff's election of the grievance procedure should still foreclose his complaint in this case.  It is undisputed that Plaintiff filed his grievances long before his EEO Complaint.  It is the initial filing that signifies the exclusive forum and indicates that the complainant has elected to pursue the non-EEO process. Moore v. Potter, 217 F. Supp.2d 364, 370 (E.D.N.Y. 2002) (citing 29 C.F.R. § 1614.107(a)(4) and § 1614.301).  For these reasons, the issues raised in the *pro se* complaint and styled as Issue # 1, Issue # 2 and Issue # 4 should be dismissed.

III.    Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination

Even if the Court reaches the merits of the Plaintiff's claims under Title VII, the complaint must be dismissed because he has not met his prima facie burden of proving discrimination.  Defendant has argued that Plaintiff failed to meet his burden because there is insufficient evidence that Plaintiff suffered adverse employment actions, or that the matters raised in the Complaint occurred under any circumstances which give rise to an inference of discrimination.  See Defendant's Memorandum at pp. 7-10. On the issue of adverse employment action, Defendant argued that in order to meet his burden in this regard, Plaintiff must show that he suffered "a materially adverse change in the terms and conditions of employment."  See Defendant's Memorandum at p. 10 (citing Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997)).  Put another way, a plaintiff must demonstrate a tangible employment action which constitutes a significant change in

employment status. See Defendant's Memorandum at p. 10 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

In his opposition papers, Plaintiff only briefly addresses the issue of adverse employment action. See Plaintiff's Memorandum at pp. 6, 9-10. Plaintiff describes Ron Hicks as the "Alter Ego" of the agency, and claims that he violated the FSIS Merit System Promotion Plan by reassigning an unqualified person as Plaintiff's supervisor. Id. at 9. Plaintiff then states that he "suffered an adverse employment action as a result of Ron Hicks' decision to violate the Merit Promotion Plan", in that "Plaintiff was subjected to being supervised by this unqualified person for approximately 1¾ years." Id.

Plaintiff has clearly failed to establish that he suffered adverse employment actions. Even taking his claims on their face, there is no evidence of any employment action at all. In Issue # 1 he claims that his grievances were improperly denied; in Issue # 2 he claims that the FSIS Boston District was wasting government resources; in Issue # 3 he claims that he was asked to inquire as to who would be retiring in the near future; and in Issue # 4 he claims that it was a misuse of government resources for the agency to assign a female circuit supervisor to temporarily cover a vacant circuit instead of him. In fact, Plaintiff concedes that he has not suffered any adverse employment action. In his opposition papers, he argues that Mr. Hicks' "unlawful harassment is imputed automatically to the agency . . . even if the harassment did not result in a tangible employment action." Id. at 9-10.

In short, Plaintiff has failed to demonstrate any adverse change in the terms and conditions of his employment. While Plaintiff correctly cites to the case of Bryson v. Chicago State University, 96 F.3d 912, 917 (7th Cir. 1996) as supporting the proposition that depriving an employee of the building blocks of his career can be an adverse employment action, this case is distinguishable. In Bryson the plaintiff, a tenured

university professor, claimed that she suffered tangible adverse actions when she lost her job title of Special Assistant to the Dean and was banished from university committee work. Bryson, 96 F.3d at 916. In this case Plaintiff has not shown that he suffered any such loss. He has not claimed or shown that he suffered any loss in title, pay, grade, or any other professional accouterment.

As one court has noted: "[Plaintiff's] testimony on this subject, however, consists entirely of unsubstantiated, conclusory assertions...There is no Title VII violation absent a materially adverse change in the terms and conditions of employment." McKenney v. New York City Off-Track Betting Corp., 903 F. Supp. 619 (S.D.N.Y. 1995) (citations omitted). Accordingly, Plaintiff has failed to satisfy this requirement of his prima facie case.

Second, Plaintiff has offered no evidence to establish that the matters raised in the Complaint occurred under any circumstances which give rise to an inference of discrimination. See Defendant's Memorandum at pp. 9-10. While Plaintiff has alleged that he was discriminated against on the basis of his race, color, gender, marital status and national origin, he has failed to support these conclusory allegations in his opposing papers. In his brief, he does offer a listing of four examples of what he considers suspect actions by the agency, relating to the denials of his grievances and the management of agency offices. See Plaintiff's Memorandum at pp. 7-8. None of these examples support even a minimal inference of discrimination.

As this Court has noted:

> . . . [T]here is no rigid rule for determining whether a plaintiff has demonstrated circumstances giving rise to an inference of discrimination. Chertkova v. Conn. Gen. Life Ins., 92 F.3d 81, 91 (2d Cir. 1996). "The Court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." Chambers v. TRM Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994). Several ways to demonstrate an inference of discrimination include showing preferential treatment for employees outside of the protected class, id., or that the plaintiff was treated less favorably than "similarly situated" employees outside the protected group, Graham [v. Long Island R.R.] 230 F.3d [34,] at 39 [(2d Cir.

2000)]. Usually the question of whether two employees are similarly situated is one for the jury. Id.

<u>Alungbe v. Board of Trustees of Connecticut State University (CSU) System</u>, 283 F.Supp.2d 674, 683-84 (D. Conn. 2003).  In this case the Plaintiff has not offered any evidence that preferential treatment was given to a similarly situated employee, or that he was treated less favorably than such an employee.   In his complaint he merely notes the race and gender of several agency employees and argues that there must be discrimination.[1]   His opposing papers do nothing to support this claim.  Plaintiff has offered no evidence of discriminatory animus or differential treatment.   Accordingly, he has failed to satisfy this prong of his prima facie case.

Plaintiff's failure to meet his prima facie burdens is fatal to his case.   Defendant submits that this failure means that the burden should not shift to her to legitimize the agency's actions.  Plaintiff has raised numerous claims in his complaint and his opposition papers, as well as in the voluminous attachments to these filings.   He is clearly disturbed by situations which arose during his employment with the agency.  But

---

[1] In support of his claims of discrimination, Plaintiff alleges the following:

- Ronald Hicks, the individual who denied his grievances, is a Black African-American Male.  <u>See</u> Complaint, Issue # 1, Issue # 2.

- Dr. Spurling, who scheduled the April 19, 1999 meeting in New Hampshire, is a single White American Female.  <u>See</u> Complaint, Issue # 2.

- Dr. Abdullah, the Deputy District Manager who had some involvement in Plaintiff's grievances and his request for documents, is an Asian American/Pacific Islander Male.  <u>See</u> Complaint, Issue # 2.

- Jan Behney, Boston District Manager, asked Plaintiff in advance of the April 19, 1999 meeting to ask who would be retiring in the near future.  <u>See</u> Complaint, Issue # 3.

- A Single White American Female who was a Circuit Supervisor covered two circuits while the Providence Rhode Island Circuit was not covered; Plaintiff as a White Male was not asked to provide coverage for his Circuit Supervisor during sick or annual leave.  <u>See</u> Complaint, Issue # 4.

while he has many complaints, he has not made a showing of how he was harmed by the agency or how the agency discriminated against him. This absence of proof warrants the entry of summary judgment in favor of the Defendant.

IV.     Conclusion

Based on the foregoing, and the reasons set forth in her moving papers, the Defendant, Ann M. Veneman, Secretary of the United States Department of Agriculture, hereby respectfully requests that her motion for summary judgment be granted, and that judgment enter in her favor as to all counts of the Complaint.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

LAUREN M. NASH
ASSISTANT U.S. ATTORNEY
FED. BAR # ct01705
P.O. BOX 1824
NEW HAVEN, CT  06508
(203) 821-3700

CERTIFICATE OF SERVICE

      This is to certify that a copy of the within and foregoing Defendant's Reply Brief in Further Support of Motion for Summary Judgment was served by first class mail, postage prepaid, on this 16th day of March, 2004, to:

Leroy J. Holdmeyer, pro se
47 Deer Lane
Ivoryton, CT  06442

                                      LAUREN M. NASH
                                      ASSISTANT U.S. ATTORNEY