UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Leroy J. HOLDMEYER,  :<br>    Plaintiff,  : <br>  : <br> vs.  : <br>  : <br>Ann M. VENEMAN, SECRETARY,  : <br>DEPARTMENT OF AGRICULTURE,  : <br>    Defendant.  : | Case No: 3:02cv1978 (PCD) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant moves for summary judgment on all counts. For the reasons stated herein, Defendant's motion is **granted**.

**I.   BACKGROUND:**[1]

Plaintiff's, pro se, complaint states that his cause of action is "[e]mployer liability for harassment by supervisors based on sex, race, color, and national origin." Compl. at 3. In an attachment to his complaint, Plaintiff also states that he was discriminated on the basis of his marital status. Plaintiff is a married, white, American male. In his complaint, Plaintiff details four series of incidents, or "Issues," which gave rise to this lawsuit: 1) the discriminatory dismissal of his formal administrative grievances; 2) agency mismanagement and the refusal to adequately respond to his concerns over the management; 3) being asked to inquire at a meeting about who is retiring soon; and 4) the fact that a female circuit supervisor provided coverage for two circuits while a male relief Supervisory Veterinary Medical Officer, presumably Plaintiff,

---

[1] This statement of the facts is derived from the parties' local rule 56(a) statements and should be considered undisputed unless otherwise noted. The facts will be discussed in more detail, as needed, in Section III.

lacked any meaningful assignment and was not asked to cover for any supervisor during sick or vacation leave.[2]

Plaintiff is a Doctor of Veterinary Medicine and was employed by the Food Safety and Inspection Service ("FSIS") of the United States Department of Agriculture ("USDA") as a Relief Supervisory Veterinary Medical Officer from June 1990 until August 2000.  As such, Plaintiff states that he worked in Albany, New York, Boston, Massachusetts, and Waltham, Massachusetts.  In November of 1996, FSIS began an extensive reorganization of its field structure, including the circuits within the jurisdiction of the Boston District, which encompassed the Providence, Rhode Island circuit.

As a result of this reorganization, in June 1997 the FSIS decided that Mr. Carl Battista would be placed in the position of Supervisory Veterinary Medical Officer and Supervisory Food Technologist.  Plaintiff alleges that initially this position was to be filled competitively and that he had applied for the position through that process.  However, the agency reversed course, choosing instead to offer the position to Battista without utilizing the competitive process.

On or about April 13, 1998, Plaintiff wrote two letters pursuant to the FSIS Administrative Grievance System ("AGS"), FSIS Directive 4771.1.  Plaintiff challenged Battista's qualifications, as a non-veterinary doctor, to supervise and rate his performance. Plaintiff also challenged Battista's promotion alleging that he lacked the requisite educational credits.

---

[2]  At times Plaintiff seems to assert separate discriminatory causes of action, while at others seems to assert that all allegedly discriminatory incidents support his contention that his grievance was denied for discriminatory reasons.  In view of Plaintiff's pro se status, his claims are construed both as raising separate actionable events and many in support of his claims concerning his administrative grievance.

On or about May 15, 1998, Plaintiff wrote to the FSIS complaining that the FSIS Boston District had been mismanaged.

On or about June 12, 1998, Plaintiff wrote to the FSIS confirming the three administrative grievances that he had filed.

On November 5, 1998, the FSIS issued a final decision denying Plaintiff's grievances.

In February, March, and May of 1999, Plaintiff submitted three additional grievances pursuant to the AGS. The grievance filed on February 24, 1999 again raised the issue of Battista's qualifications as a non-vet to supervise and rate his performance. On March 7, 1999, Plaintiff's grievance alleged that government resources were being misused at the Boston District Office based on the purported misallocation of personnel. Plaintiff's May 4, 1999 grievance concerned government mismanagement and referenced an April 1999 meeting in which Plaintiff felt that his concerns over such inefficiency were not adequately addressed.

In late March of 1999, Plaintiff contends that he was told that his AGS grievances concerning Battista's appointment were initially sustained and later denied. Plaintiff states that this information led him to believe that discrimination played a role in the denial of his AGS grievances.

On April 26, 1999, Plaintiff contacted an EEO counselor at FSIS, claiming discrimination on the basis of race, national origin, and marital status. Among other things, Plaintiff contended that Battista's position should have been filled competitively and that his grievance was denied for discriminatory reasons.

On August 6, 1999, a Notice of Right to File Formal Complaint was forwarded to Plaintiff.

On August 17, 1999, the FSIS wrote Plaintiff, summarizing his grievance history and confirming that the three issues challenged by Plaintiff were 1) the noncompetitive promotion of Battista; 2) having Battista supervise him and rate his performance; and 3) purported mismanagement of the Boston District of the FSIS.  The letter also confirmed that Plaintiff's grievances had been denied on November 5, 1998.

On August 22, 1999, Plaintiff filed a formal EEO complaint alleging discrimination on the basis of his race, color, national origin, sex, and his marital status.

On September 21, 1999 Plaintiff was informed that because it was the USDA's position that his EEO complaint covered the same subject matter as his FSIS grievances, any remaining grievances would be dismissed and the file closed.

On May 29, 2000, the USDA issued a decision on Plaintiff's EEO complaint.  The decision construed Plaintiff's complaint as primarily based on his non-selection for Battista's position and dismissed the complaint for Plaintiff's failure to contact an EEO counselor within 45 days of the allegedly discriminatory acts, as required by 29 C.F.R. § 1614.105(a)(1).

Plaintiff appealed this decision to the U.S. Equal Employment Opportunity Commission ("EEOC").  The EEOC issued its decision on August 6, 2002 finding that Plaintiff's EEO complaint actually encompassed four claims of discrimination: 1) That in late March 1999, Plaintiff received information that his grievances were initially sustained, but later reversed by the deciding manager.  Plaintiff concluded that he was denied equal employment opportunity; 2) During late March 1999, Plaintiff was informed that his grievances concerning agency mismanagement and waste and the promotion of an unqualified person were denied; 3) On April 2, 1999 a manager asked Plaintiff who was retiring in the future; and 4) The agency elected to

schedule a female supervisor to provide coverage to a circuit position which became vacant on March 3, 1999, while he lacked meaningful assignments. Plaintiff alleged that this was evidence of further agency mismanagement.[3]

The EEOC held that the complaint was properly dismissed. The EEOC found that claims 1, 2, and 4 were collateral attacks on the FSIS grievance process and that such claims are outside the purview of the EEO process. The EEOC also found that claim 3 was not actionable as Plaintiff failed to establish that he suffered any adverse employment action as a result. The EEOC did not address the timeliness concerns raised by the USDA.

Plaintiff subsequently filed the present suit. Defendant has now moved for summary judgment.

## II.    STANDARD OF REVIEW:

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will

---

[3] Plaintiff disputes this characterization of his claim, see Pl. R. 56(a)(2) Stat. at 21, but for purposes of describing the factual background of the case, using the EEOC characterization is appropriate. To the extent that they differ, Plaintiffs actual claims will be discussed, as necessary, below.

be satisfied if he or she can point to an absence of evidence to support an essential element of the nonmoving party's claim." Legg v. Dellavolpe, 228 F. Supp. 2d 51, 56 (D. Conn. 2002), citing Celotex, 477 U.S. at 322.  In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Summary judgment is proper when reasonable minds could not differ as to the import of evidence.  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Conclusory allegations will not suffice to create a genuine issue." Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). Determinations of the weight to accord evidence or credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury.  Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).

Additionally, as Plaintiff appears pro se, the Second Circuit requires district courts to give substantial leeway to pro se litigants.  Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992). As such, it is well established that a court must "read his supporting papers liberally, and...interpret them to raise the strongest arguments that they suggest." Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995), quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

### III.    DISCUSSION:

Defendant argues that summary judgment should be granted because some of Plaintiff's claims were untimely filed at the administrative level and that he fails to make out a prima facie

case for discrimination.[4]

1.   Applicable Legal Principles:

Title VII prohibits employer discrimination against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[5] "In an employment discrimination case, a plaintiff has the burden at the outset to prove by the preponderance of the evidence a prima facie case of discrimination." Collins v. N.Y. City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (citation and quotation omitted). In order to meet this burden, Plaintiff may provide circumstantial evidence of discrimination by showing "(I) membership in a protected

---

[4]   Defendant also argues that by virtue of Plaintiff's election to proceed with the agency grievance procedure, he is barred from going to the EEOC. It is unnecessary to rule on this argument. However, it does bear mentioning that while, 29 C.F.R. § 1614.301(a) provides that "[w]hen a person is employed by an agency ... and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both[,]" Plaintiff does not appear to be covered by a collective bargaining agreement. Indeed, the AGS specifically excludes from its coverage allegations that are appealable to the EEOC, or "[c]omplaints of discrimination based on race, color, religion , sex, age, national origin, or physical/mental disabling conditions." Pl. Mem. Opp. Summ. J., Exh C at 6. Furthermore, Plaintiff's allegations of racial discrimination in the grievance procedure were not raised in his AGS grievances and thus would not likely be barred under this rule. However, based on the timeliness and prima facie case deficiencies addressed below, it is not necessary to resolve these questions now.

[5]   Plaintiff never actually invokes Title VII in his complaint. The only statutory provision Plaintiff cites is 28 U.S.C. § 1343(a)(3)-(4), which provides that district courts have original jurisdiction to "redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States" and to "recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." However, given that this statute is jurisdictional and that Plaintiff ends up in District Court by way of his EEOC complaint, Title VII is the appropriate cause of action under which to consider Plaintiff's suit. This is underscored by the Court's obligation to construe Plaintiff's arguments to raise the strongest claims possible, Soto, 44 F.3d at 173, and that Title VII specifically addresses discrimination in the workplace. It should also be noted that Plaintiff has not objected to the characterization of his suit in this manner.

class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination."[6] Id. The burden in making out a prima facie case is "minimal," McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001), and an inference of discrimination can be raised merely by showing disparate treatment or "that a similarly situated employee not in the relevant protected group received better treatment" McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001). Such an inference may also be demonstrated through a disparate impact, or "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Geller v. Markham, 635 F.2d 1027, 1031 (2d Cir. 1980) (citation and quotation omitted). Of course, should an employee have direct evidence of discrimination, he or she need not meet the prima facie case requirement. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

Adverse employment action is defined as a "materially adverse change in the terms and conditions of employment." Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (citation and quotation omitted). As such, it can be as wide ranging as "discharge, refusal to hire, refusal to promote, demotion, reduction in pay" and even reprimand. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999). There is of course a threshold - a "bruised ego is not enough." Burlington Indus., Inc., v. Ellerth, 524 U.S. 742, 761 (1998) (internal citations omitted).

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." Deravin v. Kerik,

---

[6] The burden shifting framework under Title VII is not relevant here, as Defendant has only argued that Plaintiff fails to make out a prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-4, 11 U.S. 792, 93 S. Ct. 1817 (1973) (describing burden shifting framework).

335 F.3d 195, 200 (2d Cir. 2003).  Federal employees "are given 45 days from the date of the alleged discriminatory act in which to initiate administrative review of alleged employment discrimination."  Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001), citing 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105.  Although, referred to as akin to a statute of limitations, ignorance of the law is a defense "of sorts" with respect to this limitation if the aggrieved employee can show s/he "was not notified of the time limits and was not otherwise aware of them."  Pauling v. Secretary of the DOI, 160 F.3d 133, 136 (2d Cir. 1998).  However, "[s]ubjective ignorance alone will not necessarily entitle an employee to a waiver of time restrictions" and "a plaintiff may not establish a failure of notice exception to the 45 day time limit merely because he chose not to acquaint himself with the substance of an EEO notification."  German v. Pena, 88 F. Supp. 2d 216, 221 (S.D.N.Y. 2000).

     Alternatively, when the individual shows "that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, [or] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits" the time limit may be tolled.  29 C.F.R. § 1614.105(a)(2).  The deadline is presumably also subject to equitable tolling, see Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (Equitable tolling is appropriate when "where a plaintiff has been prevented in some extraordinary way from exercising his rights, or has asserted his rights in the wrong forum") (citation omitted) and may be subject to the continuing violation doctrine, see Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) ("Under that doctrine, if a plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory

act in furtherance of it'") (citation omitted).

2.   Timeliness of Plaintiff's Initial EEO Complaint:

Defendant argues that some of Plaintiff's claims are time-barred by virtue of his failing to meet the 45 day time limit for contacting an EEO counselor.

Plaintiff first contacted an EEO counselor on April 26, 1999. As stated, Plaintiff raises four "issues" either as independent bases for a cause of action or in support of one of the issues that references the initial sustaining of his grievance and later denial. Issue #1, which deals with the denial of his administrative grievances, clearly falls outside of the 45 day time limit. Plaintiff's grievances were denied on November 5, 1998, almost six months before he contacted an EEO counselor. Furthermore, all other events that Plaintiff mentions in connection to Issue #1 took place long before April 26, 1999. Battista was offered the position Plaintiff alleges should have been competitively filled in June of 1997. Battista's performance evaluation of Plaintiff, which Plaintiff alleges he was not qualified to perform, occurred on or before April 13, 1998, when Plaintiff filed a grievance with respect to this evaluation.[7] On its face, the claims raised in Issue #1 are time barred.

Plaintiff, however, maintains that in late March 1999, he received information that his grievances were initially sustained and later denied by Ronald Hicks. Def. Mem. Opp. Summ. J. at 5; Aff. of J. Roderick [Doc. No. 30]. Plaintiff argues, in effect, that prior to receiving this information he did not and reasonably should not have known that discriminatory conduct took

---

[7] Additionally, the grievance Plaintiff filed on February 24, 1999, also raising the question of Battista's qualifications to supervise and rate Plaintiff's performance, but not mentioned in the context of Issue #1, would have fallen outside of this 45 day period.

place. Id., citing 29 C.F.R. § 1614.105(a)(2).[8]

It is unclear exactly how this information changed Plaintiff's perception of the denial of his grievance such that he began to suspect that discrimination was involved. The only possible basis Plaintiff provides for this change in heart was that he learned that Ronald Hicks, the individual purportedly responsible for denying his grievance, is an African American male. See Pl. Mem. Opp. Summ. J. at 6 ("The fact that Mr. Hicks (Black African American Male) reversed this decision and subsequently denied these administrative grievances based on a cancelled notice infuriated the Plaintiff"). It is presumably not the fact that his grievance was initially sustained that is decisive in raising the question of racial discrimination for Plaintiff, as there is no racial element to that fact alone - especially considering that Plaintiff did not allege racial discrimination in his grievances at that time. No reasonable fact finder could find that simply knowing the racial background of the person responsible for making an adverse decision could support Plaintiff's assertion that prior to this revelation he did not and should not have suspected discrimination in the denial of his grievance. To do so would imply that anytime an adverse decision was made by an individual of a different race, one would be justified in assuming that race played a role in that decision. Such an assumption would be baseless if not itself discriminatory. Accordingly, Issue #1 is deemed time barred and summary judgment is **granted** in favor of Defendant on all claims associated with it.[9]

---

[8] Plaintiff does not claim that he was unaware of the fact of a 45 day time limit. Indeed, Plaintiff points out that once he received this new information, he did see the EEO counselor within 45 days. Pl. Mem. Opp. Summ. J. at 5.

[9] Plaintiff does not raise the continuing violation theory or argue for equitable tolling. However, to the extent the theory is applicable on the facts presented, because of the other deficiencies in his arguments discussed below, it would have no affect on the ultimate outcome of this ruling.

3.     Whether Plaintiff Establishes a Prima Facie Case:

Defendant argues that Plaintiff's surviving claims fail to make out a prima facie case for discrimination under Title VII. As stated, in order to establish a prima facie case, Plaintiff must demonstrate that he is a member of a protected class, qualification for the position he seeks, an adverse employment action, and circumstances surrounding that action giving rise to an inference of discrimination. Collins, 305 F.3d at 118 (citation and quotation omitted).

Plaintiff, as a white male, is not in a protected class as it is usually defined, neither is Plaintiff seeking with respect to all of his allegations of discrimination a position such that it makes sense to determine whether he was qualified for a position or not. Nevertheless, the determination of whether a plaintiff makes out a prima facie case is not to be applied in an overly mechanistic manner and is primarily an evidentiary requirement relating to the "employee's burden of presenting evidence that raises an inference of discrimination." Swierkiewicz, 534 U.S. at 510. Furthermore, Title VII applies to so-called "reverse discrimination" and is not necessarily limited to discrimination against minorities. See Equal Employment Opportunities Commission v. Local 638, 532 F.2d 821, 828 (2d Cir. 1976) (Mentioning in the context of affirmative action type remedies that "Title VII evinces a desire to avoid the identifiable forms of reverse discrimination"). Title VII does not, however, apply to discrimination on the basis of one's marital status. See 42 U.S.C. § 2000e-2(a)(1) (Prohibiting discrimination "with respect to [an employee's] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"). Thus, to the extent that Plaintiff alleges discrimination on the basis of his marital status, those claims are not recognizable under Title VII.

Initially, it bears mentioning that inasmuch as Plaintiff's factual allegations are all in support of his claim regarding the denial of his administrative grievance, that claim has been dismissed as untimely. Thus, his other factual allegations will be considered as separate allegations of discrimination under Title VII. However, even if his assertion that the denial of his grievances was discriminatory was timely, it would fail to satisfactorily establish a prima facie case for similar reasons that it was deemed as untimely.

Plaintiff fails to raise an inference of discrimination with respect to the denial of his grievance. The only evidence he offers is the fact that the decision maker is of a different race than he is. To hold that this fact alone raises an inference of discrimination would create a Title VII cause of action out of every adverse employment decision involving individuals of different races.

The subject matter of the grievances denied on November 5, 1998 does nothing to further Plaintiff's cause. The selection of Battista to fill the position of Plaintiff's supervisor and his evaluation of Plaintiff's work raises no inference of discrimination on the basis of race or sex, even crediting Plaintiff's claims that Battista was unqualified for the position, as there is no indication that Carl Battista, presumably male, is of a different racial background. Had Plaintiff demonstrated, or produced evidence sufficient to demonstrate, that Defendant gave the position to a lesser qualified individual of a different sex or race, he would have been able to sustain his burden to prove an inference of discrimination. See Gomez v. Pellicone, 986 F. Supp. 220, 228 (S.D.N.Y. 1997), citing De La Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir. 1996) (An inference of discrimination is raised if "the position was filled by someone not a member of plaintiff's protected class"). Similarly, there is no

inference of racial or sexual discrimination raised by the mere fact that Plaintiff believes his supervisor was not qualified to evaluate him.

With respect to those factual allegations that took place after the denial of his administrative grievances (Issues 2-4), which Plaintiff contends support his claims of discrimination, fail for similar reasons. Issue #2 details the allegedly discriminatory response to Plaintiff's concerns over agency inefficiency and mismanagement. On April 19, 1999, Plaintiff met with Drs. Abdullah and Sterling. Plaintiff identifies Dr. Abdullah as an Asian American/Pacific Islander male and Dr. Sterling as a single white American female. During this meeting, Plaintiff inquired as to why a certain position wasn't being eliminated sooner and was allegedly told by Sterling that she did not have to answer his question. Plaintiff states that these personnel decisions negatively impacted his job responsibilities and "lack merit and common sense." Compl. Issue #2. Plaintiff also contends that he requested workload data from Abdullah and was not provided with this information. Plaintiff filed the May 7, 1999 AGS grievance as a result of these occurrences.

There is simply no basis to conclude that discriminatory animus may have motivated these decisions. While Plaintiff documents the fact that he filed various grievances and the responses that he received to the hilt in the various exhibits he attaches to his opposition brief, the only evidence produced that would suggest that either race, national origin, or sex factored into these decisions is the fact that the decision makers were not white American males. Beyond that, Plaintiff only provides his own conclusory assertions that the decisions lack merit or common sense. Plaintiff does not produce evidence of disparate treatment - i.e. that the named individuals answered such questions or took different actions when the requests were made by

non-white American males - or disparate impact - i.e. that the decisions disproportionately affected white American males. McGuinness, 263 F.3d at 53; Geller, 635 F.2d at 1031. Plaintiff produces no evidence under any theory that could reasonably establish an inference of discriminatory animus. Even crediting Plaintiff's allegations that the decisions lacked good business sense, people of all backgrounds can make poor business decisions without discrimination playing a role in those decisions. See Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988) (Stating, with respect to a pretext analysis, that "[e]vidence that an employer made a poor business judgment ... generally is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons"); Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986) (A court "does not sit as a super-personnel department that reexamines an entity's business decisions"). Accordingly, summary judgment is **granted** with respect to Issue #2.

    Issue #3 details an April 12, 1999 conversation with Mr. Jan Behney in which Plaintiff was asked to inquire as to whether anyone, at an upcoming FSIS management meeting, was planning to retire in the near future. Plaintiff also alleges that he received similar comments from Abdullah. Plaintiff refused to ask any question regarding the retirement plans of the meeting attendees, and told Behney that what he was asking was age discrimination.

    Plaintiff makes no allegation that he was discriminated on the basis of his age, so how these events demonstrate discrimination against him is quite unclear. Furthermore, Plaintiff does not produce any evidence, or even allege, that these action resulted in a "materially adverse change in the terms and conditions of employment." Sanders, 361 F.3d at 755. Accordingly, summary judgment is **granted** on the claims made in Issue #3.

Finally, Issue #4 describes the fact that on March 3, 1999 the Providence, RI circuit supervisor position became vacant and, rather than assign one of the two Boston district relief Supervisory Veterinary Medical Officers to the position, one of which was Plaintiff, FSIS chose to "double up" the supervisory coverage of the Middlebury, CT and Providence, RI circuits. See Compl. Issue #4. Plaintiff also alleges that those in his position often provide coverage for the supervisor's sick and vacation leave, but that Plaintiff was never asked to do so and that he suspects discrimination played a role in this decision.

While Plaintiff claims to have been qualified for the Providence supervisor positions, see e.g. Pl. Mem. Opp. Summ. J., Exh. 42, by his own account no one in his position was permitted to apply for the job. Indeed, Plaintiff notes that another Supervisory Veterinary Medical Officer was not permitted to apply for the circuit supervisor position. Plaintiff provides no evidence, other than his own assertions, to demonstrate that this decision was motivated by racially or sex based animus. Similarly, Plaintiff provides no evidence that his non-selection to cover the circuit supervisor's sick and/or vacation leave was discriminatory. Plaintiff produces no direct evidence of discriminatory intent and there is no circumstantial evidence that would give rise to an inference of discrimination by showing that other non-white American males were allowed to cover for the circuit supervisor while he was not.[10] Accordingly, summary judgment is **granted**

---

[10] While he does not explore this issue in his opposition brief, Plaintiff does suggest in Issue #4 that he may have been retaliated against for filing his administrative grievances. In order to make out a claim for retaliation under Title VII, Plaintiff must show participation in a protected activity known to the defendant; an employment action disadvantaging the plaintiff; and a causal connection between the protected activity and the adverse employment action. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir., 1998). Causation can be demonstrated "indirectly by showing that the protected activity was followed closely by discriminatory treatment," "through other evidence such as disparate treatment of fellow employees who engaged in similar conduct," or "directly through evidence of retaliatory animus directed against a plaintiff by the defendant." De Cintio v. Westchester County Medical Center, 821 F.2d 111, 115 (2d Cir. 1987) (internal citations omitted). Plaintiff's initial administrative grievances had nothing to do with

on the factual allegations raised in Issue #4.

### IV.  CONCLUSION:

For the reasons stated herein, Defendant's motion for summary judgment [Doc. No. 19] is **granted**.  The Clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, June  9 , 2004.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court

---

discrimination covered under Title VII, thus there would be no protected activity until, at the earliest, Plaintiff's April 1999 contact with an EEO counselor during which he raised the question of the discriminatory denial of his grievances.  However, with respect to causation, he provides no direct evidence of retaliation.  The circuit supervisor position became vacant prior to his complaint and he states no dates at all relating to his non-selection to cover sick and vacation time, thus precluding an inference of causation based on proximity in time.  There is no evidence of disparate treatment.  Finally, with respect to the circuit supervisor position, it is not clear at all that refusal to hire anyone, not simply Plaintiff, could be construed as an adverse action.