LEROY J. HOLDMEYER,

    PLAINTIFF                         CIVIL NO. 3:02CV1978 (PCD)

v.

ANN M. VENEMAN, SECRETARY,
DEPARTMENT OF AGRICULTURE,

    DEFENDANT                       JANUARY 27, 2004

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 56 of the Local Rules of Procedure for the District of Connecticut, and the Order of this Court, the Plaintiff, Leroy J. Holdmeyer, hereby respectfully submits this memorandum in support of opposing Defendant's motion for summary judgment in the above captioned action. These papers will show that the Plaintiff disagrees with the Defendant's version of the facts; has evidence contradicting the Defendant's version; and the evidence relied on, if believed by a jury, would be sufficient to support a verdict in his favor. Judgment in favor of the Plaintiff is appropriate for the reasons set forth below. In Burlington Industries, Inc. v. Ellerth, 118 S. Ct. 2257 (1998), and Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998), the Supreme Court made clear that employers are subjected to vicarious liability for unlawful harassment by supervisors. The standard of liability set forth in these decisions is premised on two principles: 1) an employer is responsible for the acts of its supervisors, and 2) employers should be encouraged to prevent harassment and employees should be encouraged to avoid or limit the harm from harassment. In

*1*

order to accommodate these principles, the Court held that an employer is always liable for supervisor's harassment if it culminates in a tangible employment action.

II.   Factual Background

The Plaintiff has submitted a Statement of Material Facts, Local Rule 56 (a)(2), which disputes issues of material fact presented by the Defendant. Documentary of circumstantial evidence as outline 1 through 48 is wholly incorporated by reference herein.

III.   Description of the case

A formal Equal Employment Opportunity complaint was filed by Plaintiff on 8/22/99. This complaint referenced as (Exhibit 26, 27, 29, 31) and all relevant unresolved administrative grievances that support and demonstrate (circumstantial evidence) harassment and discrimination efforts to maintain Plaintiff's current position and pursue upward mobility within FSIS. Plaintiff was denied an equal employment opportunity as well as being subjected to an adverse employment action. The United States Department of Agriculture (USDA) is subjected to vicarious liability to a victimized plaintiff for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the Plaintiff. The Defendant's description of the case is inaccurate. The following statement made by the Defendant, "Plaintiff argues that he should have been selected for the supervisory position during an FSIS reorganization, and that the failure to select him constituted discrimination based on sex, race, color and national origin." is false. The Plaintiff's complaint did not state (verbally or written) that he should have been promoted. This is not a non selection issue. The plaintiff has stated

that the selection of the supervisory position should have gone through the competitive promotion procedures.

IV.  Standard of Review

The Fifth and Fourteenth Amendments of the United States Constitution limit the power of the federal and state governments to discriminate.  The Fifth Amendment has an explicit requirement that the federal government not deprive individuals of "life, liberty, or property," without due process of the law.  It also contains an implicit guarantee that each person receive equal protection of the laws.  See U.S. Constitution Amend. V.  The Fourteenth Amendment explicitly prohibits states from violating and individual's rights of due process and equal protection.  See U.S. Constitution Amend. XIV.  In the employment context the right of equal protection limits the power of the federal government to discriminate in their employment practices by treating employees unequally because of membership in a group.  Title VII of the Civil Rights Act of 1964 prohibits discrimination in many more aspects of the employment relationship.  It makes it illegal for employers to discriminate in hiring, discharging, compensation, or terms, conditions, and privileges of employment.

Summary judgment may be granted only when the movant carries its burden of demonstrating there is no genuine issue of material fact for trial, and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©; see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor.  See Gallo v.

Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994) It is clear that material issues of fact remain genuinely disputed. See Plaintiff's Local Rule 56(a)(2) statement. As such, to grant summary judgment would require a court to decide a disputed fact – something beyond its compass at this stage of the litigation. See Gallo, 22 F.3d at 1224.

In prior cases it is emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinary at issue. See, e.g., Gallo, 22 F.3d at 1224; Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2nd Cir. 1989). Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination. See Chambers v. TRM Copy Ctrs. Corp., 43 F. 3d 29, 37 (2d Cir. 1994). See documentary of circumstantial evidence as outline 1 through 48.

Mr Ron Hicks is the "employer's alter ego" Ellerth, 118 S. Ct. at 2267 , Faragher, 118 S. Ct. at 2284, Harrison v. Eddy Potash, Inc 158 F.3d 1371, 1376 (10th Cir, 1998) See John Roderick's Affidavit In such circumstances, the official's unlawful harassment is imputed automatically to the employer. Thus the employer cannot raise the affirmative defense.

V.   Argument: Summary Judgment should enter as a matter of law as to the complaint

All of the Plaintiff's claims are not subject to dismissal based on the material facts and substantive law.

4

<u>Defendant's assertion that the Plaintiff has failed to exhaust his administrative remedies as to certain of his Title VII claims</u>

What is true is that standard principles of limitations law, notably the discovery doctrine and the doctrines of equitable estoppel and equitable tolling, excuse the claimant from having to file before it is feasible for him to do so, and these principles apply to cases brought under Title VII. The Supreme Court so held in Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)

The initial contact with the Equal Employment Opportunity counselor was made within the 45 days of becoming aware of a discriminatory matter. 29 C.F.R. 1614.105(a)(2) states that the agency or the commission shall extend the 45 day time limit in paragraph (a)(1) of this section when the individual shows that he did not know and reasonably should not have known that the discriminatory matter occurred, that despite due diligence he was prevented by circumstances beyond his control from contacting the counselor within the time limits. Plaintiff became aware of the discriminatory matter (last week in March 1999) when John Roderick, (see John Roderick Affidavit) volunteered information revealed from conversations with Civil Rights personnel whom had direct knowledge of reviewing and sustaining Plaintiff's administrative grievances. The record will show that the Plaintiff did initiate two administrative grievances according to FSIS Directive 4771.1 on April 13, 1998 which opposed FSIS actions that Plaintiff believes to be unlawful. (Violation of the FSIS Merit Promotion Plan) Since discovering the Civil Rights personnel direct knowledge of reviewing and sustaining Plaintiff's grievances, Plaintiff now aware of the discriminatory matter believes that discrimination based on race and color played a role in Ron Hicks denial of his administrative grievances. This discovery also identifies Ron Hicks as the alter ego of the agency. Plaintiff was denied

and equal employment opportunity as well as being subjected to an adverse employment action. (Plaintiff subjected to supervision by someone that lacked basic requirements for the supervisory position). The fact that Mr. Hicks (Black African American Male) reversed this decision and subsequently denied these administrative grievances based on a cancelled notice infuriated the Plaintiff.

<u>Defendant's assertion that Plaintiff's election of the grievance process forecloses his Title VII complaint</u>

Plaintiff is not covered by negotiated grievance procedures.

FSIS Directive 4771.1 Revision 2 Administrative Grievance System dated 2/18/98 specifically states the following:

(Page 1) I. Purpose
This directive describes policy and procedures for the Administrative Grievance System. The system provides a fair, equitable, and timely forum for internal review and resolution of employment related disputes.

(Page 2) VIII. Employees Covered By a Negotiated Agreement

This directive applies to any employee not covered by a negotiated grievance procedure established through negotiations with a labor organization to which exclusive recognition has been granted. ......

(Page 7) G. Cancellation/Suspension of Grievance.

The Agency is authorized to cancel or suspend a grievance or a portion of a grievance when the grievant: (5) later files an EEO complaint. (See exhibit C)

A formal EEO complaint was filed by Plaintiff on 8/22/99. This complaint referenced as (Exhibit 26, 27, 29, 31) and all relevant unresolved administrative grievances that support and demonstrate as circumstantial evidence of harassment and discrimination efforts to

maintain Plaintiff's current position and pursue upward mobility within FSIS. A reasonable fair minded fact finder would notice the material fact of gross mismanagement of government resources as identified in Exhibit 26 and 31 along with the high frequency of delayed and/ or lacking a response to Plaintiff's administrative grievances (See Exhibit 13, 16, 28, 35, 36) which illustrates an inference of employment discrimination.

<u>Defendant's assertion that Plaintiff has failed to establish a prima facie case of discrimination</u>

According to the Supreme Court's recent decision on Swierkiewicz v. Soreman N. A., No. 00-1853 U.S. ___ (Feb. 26, 2002), complaints of employment discrimination cannot be dismissed solely for having failed to plead facts to satisfy each element of the McDonnell Douglas prima facie case. An employment discrimination complaint need not contain specific facts establishing a prima facie case under the McDonnell Douglas framework, but instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2). The McDonnell Douglas framework which requires the plaintiff to show (1) membership in a protected group (See exhibit 44), (2) qualification for the job in question (See exhibit 6), (3) an adverse employment action (Plaintiff subjected to supervision by someone that lacked basic requirements for the supervisory position, Bryson v. Chicago State University, 96 F.3d 912, 917 (7th Cir. 1996)("Depriving someone of the building blocks for …a promotion… is just as serious as depriving her of the job itself.") See also Supreme Court decision in Faragher and Ellerth), and (4) circumstances supporting an inference of discrimination (See exhibit 1 – 48)

**Example such as:**

7

1. High frequency of delayed and/ or lacking a response to Plaintiff's administrative grievances (13, 16, 28, 35, 36)

2. Timeframe of critical events, Plaintiff's Local Rule 56(a)(2) statement # 18 Civil Rights personnel involvement in case

3. Providence, RI and Middlebury, CT supervisory positions assigned to one person while Plaintiff lacks meaningful work assignments (12, 26)

4. Plaintiff directed to use the Freedom of Information Act (FOIA) to obtain data documenting and supporting Plaintiff's meaningless work assignments. (31, 35, 36, 37, 38, 45, 46, 47)

5. Two relief Supervisory Veterinary Medical Officer positions providing coverage for 6 full time positions (26, 31)

See, e.g., 411 U. S., at 800. The Court has never indicated that the requirements for establishing a prima facie case apply to pleading. Moreover, the McDonnell Douglas framework does not apply where, for example, a plaintiff is able to produce direct evidence of discrimination. See Trans World Airlines, Inc. v. Thurston, 469 U. S. 111, 121. Under the Second Circuit's heightened pleading standard, however, a plaintiff without direct evidence at the time of his complaint must plead a prima facie case of discrimination even though discovery might uncover such direct evidence. It seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on merits if direct evidence of discrimination is discovered. Moreover, the precise requirements of the prima facie case can vary with the content and were "never intended to be rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567,577. It may be difficult to

define the precise formulation of the required prima facie case in a particular case before discovery has unearthed relevant facts and evidence. Consequently, the prima facie case should not be transposed into a rigid pleading standard for discrimination cases. Imposing the Second Circuit's heightened standard conflicts with Rule 8(a)'s expressed language, which requires simply that the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rest." Conley v. Gibson, 355 U.S. 41, 47. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73. The Plaintiff's complaint in this case, easily satisfies Rule 8(a)'s requirements because it gives respondent fair notice of the basis for his claims and the grounds upon which they rest. In addition, it states claims upon which relief could be granted under Title VII. (See exhibit 44) Thus, the complaint is sufficient to survive respondent's motion to dismiss.

Ron Hicks is the "Alter Ego" of the agency (FSIS). He violated the FSIS Merit Promotion Plan by reassigning a person who lacked the basic requirements for a supervisory position in which subsequently supervises the Plaintiff's position. (See exhibit 9) Plaintiff suffered an adverse employment action as a result of Ron Hick's decision to violate the Merit Promotion Plan. Plaintiff was subjected to being supervised by this unqualified person for approximately 1 ¾ years. As the Supreme Court pointed out, an employer is liable for unlawful harassment whenever the harasser is of a sufficiently high rank to fall "within that class…who may be treated as the organization's proxy. "Faragher, 118 S. Ct. at 2284. In such circumstances, the official's unlawful harassment is imputed automatically to the employer. Thus the employer cannot raise the

affirmative defense, even if the harassment did not result in a tangible employment action. Any rational fact finder would notice the violation of the FSIS Merit Promotion Plan. The Plaintiff' has a formal education of 276 semester hours (Doctor of Veterinary Medicine degree). The noncompetitive reassignment of an individual with only 25 credit hours (no degree) who supervised Plaintiff's decisions regarding the surveillance of diseases such as BSE (Mad Cow Disease) and other food safety issues is unacceptable and dangerous.

In a decision written by Justice Thomas, Desert Palace Inc., v. Costa, 539 U.S. ___, No. 02-679 (2003), the United States Supreme Court affirmed a decision out of the 9th Circuit holding that the Civil Rights Act of 1991 did not require a showing of direct evidence of discrimination as a prerequisite to a jury's consideration of mixed motive. Rather, a plaintiff need only present sufficient evidence for a reasonable jury to conclude by a preponderance of the evidence that a protected characteristic was a motivating factor for any adverse employment action. In particular, Justice Thomas noted that -2000e-2(m) of the Civil Rights Act of 1991 unambiguously states that a plaintiff need only "demonstrate" that an employer used a forbidden consideration with respect to an adverse employment decision and that Title VII defines the term "demonstrates" merely as to "meet the burdens of production and persuasion." See Exhibit 9 (Violation of FSIS Merit Promotion Plan) Justice Thomas also chose to cite language from a 1957 Supreme Court decision, Rogers v. Missouri Pacific R. Co, 348 U.S. 500, n.17 (1957) stating that "circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.

D.   Conclusion

For the foregoing reasons, Plaintiff holds that genuine issues of material fact do exist that disagrees with the Defendant's version of the facts; the evidence contradicts the Defendant's version: and the evidence relied on, if believed by a jury, would be sufficient to support a verdict in favor of the Plaintiff.  Accordingly, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

*Leroy J. Holdmeyer*

Leroy J. Holdmeyer   (Pro Se)
#47 Deer Lane
Ivoryton, CT  06442
(860) 767-7110

11